Equitable Life Assurance Society of U. S., Appellant, v. Saurman.

Argued December 18, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER and JAMES, JJ.

*Robert J. Sterrett,* with him *Alexander & Green,* for appellant.

*George W. Harkins, Jr.,* for appellee.

OPINION BY JAMES, J., March 1, 1937:

Early in July 1932, Elizabeth W. Saurman wrote a letter to the Equitable Life Assurance Society of the United States seeking information as to the cost of an annuity. On July 5, 1932 two agents of the company, Ralph C. Carnes and John P. Cranston, called upon her, at which time Elizabeth Saurman made an application for a $3\frac{1}{2}$-unit contract, which application contained no information as to the monthly payment to be paid. Shortly afterwards a notation was made on the application to issue an additional contract for $1\frac{1}{2}$ units. Two contracts of the company were issued for

3½ units and 1½ units respectively, both of which were brought to the home of the assured; when it was suggested to the assured that one contract for 5 units be written, to which assured agreed. In the early part of August 1932, the same agents returned with the contract for 5 units providing for a monthly payment of $55.85 beginning at the age of 60, for a quarterly premium of $132.50, which amount was paid by assured. In November 1934, when assured became interested in an additional annuity contract, the insurance company discovered that an alleged error had been made in the monthly payment in that the amount stated was $55.85, whereas the correct amount should have been $23.15. The assured refused to surrender the policy for correction, whereupon the insurance company filed a bill in equity to reform the contract to conform with the intent and agreement of the parties. The assured filed her answer and after full hearing the chancellor, in a comprehensive opinion, dismissed the bill and, among other findings of fact, found as follows: "6. Plaintiff has failed to present clear, precise and indubitable evidence that the policy for five units issued to the defendant providing for a monthly annuity of $55.85 beginning at the age of 60 for a quarterly premium of $132.50 was the result of a mutual mistake, and that the agreement of the parties was that the contract should provide for a monthly annuity of $23.15 ...... 9. The mistake, if any, made in the issuance of policy now in the possession of the defendant, was the careless and negligent act of the plaintiff's agents or employees and not of the defendant. 10. The mistake was not mutual." The chancellor further found as conclusions of law: "1. There is no probative evidence of a mutual mistake requiring the reformation of the annuity policy issued to the defendant. 2. Any mistake made in the issuance of the policy now in the possession of the defendant was due

solely to the negligence of the plaintiff's agents or employees and, therefore, cannot be remedied by a court of equity." Exceptions to the chancellor's findings of fact and conclusions of law were dismissed by the court in banc, which entered a final decree dismissing the bill.

The rule is long established that the findings of a chancellor, when affirmed by the court in banc, have the force and effect of a jury's verdict, and ordinarily will not be disturbed on appeal: *Custis v. Serrill et al.,* 321 Pa. 154, 183 A. 774. The sole question for us to determine is whether the evidence may fairly be said to support the conclusion of the judge who saw and heard the witnesses.

The testimony produced at the hearing, briefly stated, is as follows: Ralph Carnes testified that at the first interview, accompanied by John P. Cranston, he learned that Elizabeth Saurman was willing to invest $25 or $30 per month; that at the second interview a $3\frac{1}{2}$ unit policy was shown to assured together with another policy for $1\frac{1}{2}$ units, and it was then decided to issue a new policy for 5 units; that he did not remember any statements made regarding the amount payable under any of the policies, but they did go over the two policies for $3\frac{1}{2}$ units and $1\frac{1}{2}$ units with the assured at the second interview. He further testified that at the first interview the exact amount of income was not stated to the assured. He and the agent delivered the 5-unit policy to Elizabeth Saurman, went over the contract with her, but did not notice that there was an error as to the amount. Cranston was unable to give any positive information as to what transpired at the several interviews. The company was not able to produce the original $3\frac{1}{2}$-unit and $1\frac{1}{2}$-unit policies because they had been destroyed by it in the usual course of business. However, it offered in evidence its original work sheets from which the orig-

inal policies were prepared. They showed that the 3½-unit policy provided an income of $16.20 per month and the 1½-unit policy an income of $6.94 per month. Various clerks were called who testified that they had worked on these work sheets in the process of preparing the policies. The work sheet of the consolidated policy, on which the allegedly mistaken amount was placed, was offered in evidence. Richard D. Sieber, plaintiff's clerk, testified that he was the one who originated the error by ordering on the work sheet the amount of $55.85. His explanation of the mistake was that in going over the rate sheet, he took his figures from the column for males instead of the one provided for females. These figures were later checked by other clerks, but the mistake was not discovered. The face of the policy provided that "at any time prior to commencement of such Annuity payments ...... the Annuitant may ...... elect in writing in lieu thereof either: (1) A LIFE ANNUITY ...... or (2) A RE-FUND ANNUITY ......" Both of these annuity plans showed a conflict with and contradiction of the annuity as fixed on the face of the policy.

The assured's narrative, corroborated by her sister, was that she had told the agents she desired an income of $30 a month and that Carnes told her that would be 3½ units; that at the second interview Carnes told her 5 units would give her $55.85 per month at the age of 60, which she noted was better than the offer of another company where she had made inquiries; that the offer of the other company was more than the amount of $23.15, which the insurance company contends the annuity should have been; that when the consolidated policy was delivered to her, Carnes read to her from the face of the policy that the income was $55.85 per month. She testified that the two original policies carried on their faces two figures which when added totaled $55.85.

This testimony presented a question of fact for the chancellor to determine. He accepted assured's version, which established that no mistake had been made but that the policy delivered was in accordance with the statements made by the company's agents, and if a mistake had been made by the company, assured had no knowledge thereof.

The governing principles, applicable to the reformation of a contract of insurance, have recently been discussed in *Kaufman v. New York L. Ins. Co.,* 111 Pa. Superior Ct. 273, 169 A. 447 (affirmed in 315 Pa. 34, 172 A. 306), where we cited with approval what was said in *Boyce v. Fire Ins. Co.,* 24 Pa. Superior Ct. 589: "It is a settled rule in equity that where the court is asked to reform the written evidence of a contract, the mistake must be mutual ...... A court of equity has not power to reform an agreement; it can only correct the written evidence of the agreement to make it correspond to the understanding of the parties." We further recognized, however, a broader principle that a mistake by one party, coupled with knowledge thereof by the other, may, under certain circumstances, afford a basis for equitable relief. If the testimony of the assured was believed, we have no proof whatever of mistake, but rather that the terms of the contract were as represented by the company's agents. The conflict or contradiction between the amount fixed on the face of the policy and the tables of optional annuity payments was not sufficient to charge the assured with notice that a mistake had been made. Assured's main concern was the receipt of a fixed income, which the policy definitely provided for, and she was under no duty to analyze other provisions which she might adopt when arriving at the age when the option was to be exercised. She was entitled to rely on the definite promise of the policy and was not required to examine optional provisions, which were apparently for her

benefit, to determine whether such provisions were inconsistent with the face of the policy.

Appellant argues that the court erred in holding that the only contract was the 5-unit consolidated policy. If we concede that the contract was the original policies for $3\frac{1}{2}$ and $1\frac{1}{2}$ units, we are still faced with the positive testimony of the assured that the agents, while retaining the policies, stated that the combination of the policies would provide an income of $55.85 per month at age sixty.

The findings of the chancellor, approved by the court in banc, were fully supported by the testimony.

In view of our conclusion, we have not discussed the incontestable clause of the policy or any other question not directly raised on this appeal.

Decree affirmed.