Woodmen of the World Life Ins. Co. v. Arnold

608

*Charles Wolfe Kalp*, for plaintiff.

*W. Roger Fetter*, for defendant.

SHOWERS, P. J., February 1, 1960.—This case is an action in equity which was initiated on December 21, 1955, in this court by the filing of a complaint in equity in which plaintiff has requested the court to reform a fraternal benefit certificate. Plaintiff is a fraternal benefit society organized and incorporated under the laws of the State of Nebraska and was formerly known as the Sovereign Camp of the Woodmen of the World, but by amendment of its articles of incorporation is known as the Woodmen of the World Life Insurance Society.

On or about March 21, 1935, defendant applied for a twenty year paid-up endowment insurance contract with plaintiff association in the amount of $1,000. Pursuant to the application, certificate no. T-1268671-E was issued to defendant, Marvin C. Arnold, on or about April 2, 1935. The certificate provides that after all payments have been made for a period of 20 years, plaintiff will pay cash to defendant in the amount of $1,000, or, at the option of the insured, upon receipt of evidence of insurability, it will issue a certificate of paid-up insurance in the amount of $4,034 payable at the death of the member. From and since the date of his application, defendant made all payments pursuant

to the said contract, which payments were completed on or about March 30, 1955, and subsequent thereto, the insured elected the option to receive a certificate of fully paid insurance in the amount of $4,034. The application was received by plaintiff on or about June 20, 1955, and upon receipt of said application, plaintiff refused to issue such certificate for the reason that the original contract, as issued, was in error in that the amount of paid-up insurance available to defendant was $2,476 rather than $4,034 as provided for and set forth in the contract issued by plaintiff to defendant.

Plaintiff filed as aforesaid its complaint in equity, and following the dismissal of preliminary objections, defendant filed an answer to plaintiff's complaint, to which answer a reply to new matter was filed by plaintiff. Depositions of C. W. Goodwin and Daniel D. Macken in response to interrogatories were taken December 2, 1958, and filed as a matter of record. Subsequently, the depositions were offered in evidence and oral testimony of defendant was taken, after which the case was set down for argument and is now before the court for disposition on the facts and the merits of the case, from which the court makes the following

### Findings of Fact

1. Plaintiff is a fraternal benefit society organized, incorporated and existing under and by virtue of the laws of the State of Nebraska. Plaintiff was formerly known as the Sovereign Camp of the Woodmen of the World, but by amendment of its articles of incorporation in 1937, the name of the society was changed to Woodmen of the World Life Insurance Society.

2. Defendant, Marvin C. Arnold, is an individual residing in Buffalo Township, Union County, Pa.

3. On March 21, 1935, defendant filed an application for membership in plaintiff's society and for a

twenty year paid-up endowment option with certificate in the face amount of $1,000, with supplementary agreements providing for double indemnity and waiver of payment of premium in the event of total and permanent disability. This certificate no. T-1268671-E was issued by plaintiff on or about March 30, 1935, delivered to and accepted by defendant on or about April 2, 1935.

4. The certificate provides that after all payments have been made at the rate of $3.69 per month for a full period of 20 years, upon written request of the member, the association will pay in cash the amount of the endowment proceeds in the sum of $1,000, or, at the option of the member, upon receipt of evidence of insurability satisfactory to the association, it will issue a certificate fully paid up for $4,034, payable at the death of the member.

5. Defendant has made all payments as provided for in the said certificate, at the rate, for the time, and in the manner provided therein, for the full period of 20 years, said certificate having matured on or about March 30, 1955; has submitted to plaintiff satisfactory evidence of insurability and has submitted a written request for the certificate of paid-up insurance in the amount of $4,034. The application, however, was not executed by defendant and a second form was mailed to him by plaintiff with the request that it be signed and returned. The signed application was received by plaintiff on or about June 20, 1955.

6. That there was a mistake made in the preparation of the certificate by plaintiff in that the amount of paid-up insurance available to defendant, according to the American Experience Table of Mortality with an interest assumption of 4 percent, should have been $2,476 instead of the amount set forth in the face of the policy in the sum of $4,034.

7. The mistake made in the preparation of the policy was committed by plaintiff without the knowledge or participation of defendant.

8. Defendant had no knowledge of plaintiff's mistake at the time of the issuance of the certificate or thereafter, until after he made proper application for the fully paid-up policy in the amount of $4,034.

9. That there was no obvious conflict between the various clauses of the certificate to charge defendant with constructive knowledge of plaintiff's mistake.

10. The amount of plaintiff's mistake is not so great as to charge defendant with knowledge of plaintiff's mistake.

11. The mistake was solely attributable to the carelessness and negligence of plaintiff, its agents or employes and was without the knowledge or participation of defendant.

12. The mistake was not the mutual mistake of the parties, but was entirely committed by plaintiff in the preparation of the policy.

13. Plaintiff first discovered the mistake in the amount of paid-up insurance which is set out in defendant's certificate, on or about April 28, 1955.

14. When the mistake was discovered, plaintiff advised defendant of the foregoing facts and advised him that plaintiff would endorse the certificate for paid-up insurance in the amount of $2,476, or pay defendant the endowment proceeds of $1,000 if he determined that he did not wish paid-up insurance. Defendant, however, has demanded that his certificate be endorsed as a paid-up policy in the sum of $4,034.

## Discussion

A number of questions have been presented for consideration by this court in order that an equitable disposition and determination may be made of the issues

presented in this case. One of the questions raised in the pleadings on behalf of defendant under the heading of "New Matter", is that of laches on the part of plaintiff on account of waiting for a period of 20 years, and until full performance of the contract had been tendered by defendant.

Laches is an equitable defense controlled by equitable considerations such as questions of prejudice, or lack of prejudice, resulting from a delay, the character of the property involved as to its being fixed or fluctuating in value, or other matters, so that the propriety of such defense is dependent upon the circumstances of each case. See 23 R. C. L. 352. It is obvious that an error did exist in the preparation by plaintiff of the certificate issued to defendant.

The relief sought here is not an offensive relief; the relief sought is defensive. The defense asserted against the claim of defendant was made for the first time a few months prior to the commencement of the equity suit by plaintiff for the reformation of the contract entered into by its officers and the insured on or about March 30, 1935, in which it contends that an error has occurred in the preparation of the certificate. We do not believe that plaintiff is guilty of laches in failing to discover the error prior to the expiration of the completion of the contractual obligation of defendant, such as would preclude it from filing a complaint in equity for the reformation of the contract.

A number of cases in other jurisdictions which have been cited by counsel for plaintiff, are contrary to what we understand to be the law in Pennsylvania in an action for the reformation of a contract of insurance. The governing principles applicable to the reformation of a contract of insurance, have recently been discussed in Kaufman v. New York Life Ins. Co., 111 Pa. Superior Ct. 273, 169 Atl. 447, affirmed in a per curiam

opinion in 315 Pa. 34, 172 Atl. 306, where the court cited with approval the findings in the case of Boyce v. Fire Ins. Co., 24 Pa. Superior Ct. 589, as follows:

" 'It is a settled rule in equity that where the court is asked to reform the written evidence of a contract, the mistake must be mutual . . . A court of equity has not power to reform an agreement; it can only correct the written evidence of the agreement to make it correspond to the understanding of the parties.' "

We further recognize, however, that a mistake by one party coupled with knowledge thereof by the other, may, under certain circumstances, afford a basis for equitable relief. If the testimony of the insured was believed, we have no proof whatever of mistake, but rather that the terms of the contract were as prepared and inserted in the certificate of insurance by the company's agents.

It is contended by counsel for plaintiff that paragraph 1 under that portion of the policy on page 2 captioned "Special Provisions and Conditions" which provides as follows: "1. Mortality Standard: The reserve shall be computed upon the American Experience Table of Mortality with interest at 4 per cent per annum, in accordance with the twenty-payment life modification of the preliminary term method of valuation; subject to such modification the first year's insurance under this policy is term insurance" is an obvious ambiguity and inconsistent with the face of the policy. With this contention, under the circumstances and facts set forth in this case, we are unable to agree. It is admitted that the certificate was prepared by the association and signed by facsimile signatures by the president and secretary of the association. It is apparent that the certificate after having been prepared, was *"inspected and countersigned"* by one R. Fitzgerald whose official capacity in the Sovereign Camp of the Woodmen of the World is not indicated. The certi-

ficate was later, on or about April 2, 1935, forwarded to the local camp, at which time J. P. Miller, financial secretary, delivered the policy to defendant, went over the certificate with defendant, indicated to him the figures on the certificate, the cash value, the amount at maturity and also at death and remarked how much it would be worth at death. The figure which was directed to the attention of defendant, according to his testimony which was not contradicted, was $4,034 which is the figure that plaintiff in this proceeding desires to have reformed to read $2,476. Defendant after having had the certificate explained to him, signed the certificate in the presence of the financial secretary. Defendant further testified that he had never been presented with a copy of the constitution and by-laws of the Woodmen of the World, nor did he ever receive any actuarial statement concerning the certificate issued to him. It is plaintiff's contention that to issue a certificate of paid-up insurance to defendant in the amount of $4,034 would discriminate against other members of the society, and would be in conflict with, and in violation of the constitution, laws, and by-laws of the society, and the laws of Pennsylvania, as $2,476 is the only amount of paid-up insurance to which defendant, or any other member of the society of the same age and holding a similar certificate in the same amount, would be entitled, which of course, under the law is not mandatory to have attached to the certificate of insurance. The conflict, contradiction or inconsistency between the amount affixed on the face of the policy and that part of the certificate quoted above under special provisions and conditions, together with the constitution, laws and by-laws of the society, were not sufficient to charge the assured with notice that a mistake had been made.

In the Kaufman case, supra, a similar situation presented itself for the determination of the court by sec-

tion 1 of the statute enacted May 3, 1909, P. L. 405 (since repealed), which provides, in part, as follows:

"No life insurance company organized under the laws of, or doing business in this Commonwealth, shall make or permit any distinction or discrimination in favor of individuals, between insurants of the same class with equal expectation of life, in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any of the terms and conditions of the contracts it makes, nor shall any such company or agent thereof make any contract of insurance, or agreement as to such contract, other than as plainly expressed in the policy issued thereon . . ."

The court in the Kaufman case, in dismissing the argument by counsel, stated as follows, page 281:

"Defendant contends that if recovery be allowed for the amount stated on the face of this policy, the intent of the statute will be violated as certainly as if the discrimination had been knowingly made. In our opinion this places too strict a construction upon the statute. Obviously, the assets of insurance companies must be preserved for the benefit of all, but the common good will not be harmed through occasional and inadvertent mistakes in the preparation of policies. Such errors occur but seldom, and will cause no substantial detriment; only when an insurance company deliberately enters upon a course of discrimination will its reserves become depleted. It is against such intentional discrimination on the part of the company, and intentional acceptance of such preferential benefits by the insured, that the statute is aimed."

We believe that the statute set forth in plaintiff's brief, 40 PS §1060, places an interpretation on the act which was never intended by the legislature to be applicable in a case presenting facts and circumstances as hereinbefore set forth.

In the case of Equitable Life Assurance Society of U. S. v. Saurman, 126 Pa. Superior Ct. 184, wherein the insurance company issued a policy providing for a monthly annuity in the amount of $55.85 rather than $23.15 as should have been stated on its face, and there was contained in the policy annuity plans on their face showing a *conflict* and *contradiction* with the face of the policy, the court speaking through James J., refused reformation after only two years of premiums, saying at page 189:

". . . The *conflict* or *contradiction* between the amount fixed on the face of the policy and the tables of optional annuity payments was not sufficient to charge the assured with notice that a mistake had been made. . . . She was entitled to rely on the definite promise of the policy and was not required to examine optional provisions, which were apparently for her benefit, to determine whether such provisions were inconsistent with the face of the policy."

We, therefore, believe in the case before the court, that the inconsistencies and contradictions between the stated amount on the face of the policy, together with the other provisions in the policy itself, the constitution, laws and by-laws of plaintiff and the statutes of the Commonwealth cited by counsel for plaintiff, are not sufficient to charge defendant with knowledge of plaintiff's error. Especially is this so, where the policy was "inspected and countersigned" by one R. Fitzgerald of plaintiff's company, and where the local agent, one J. P. Miller, financial secretary, reviewed with defendant before the delivery of the policy to him, and before execution by him, the amount he would be entitled to receive, or the amount of paid-up insurance which his beneficiary would be entitled to receive under the terms of the policy at the death of the member.

Counsel argues in his brief and orally contends that defendant knew, or should have known, of this obvi-

ous mistake when the membership certificate was delivered to him, since he was intelligent, educated, a successful business man and had knowledge of and experience in connection with life insurance contracts. The testimony on the part of defendant indicates that on the date of the execution of the certificate, he was 24 years of age, a graduate of a secondary school and had been employed as a farm hand for a number of years, until the time he entered into the present vocation as an implement dealer and feed salesman. Nowhere does it appear that defendant had knowledge of and experience in connection with life insurance contracts, except for the training and experience he obtained from the agent of plaintiff, J. P. Miller, who appears as a witness to the signature of defendant, and also as a financial secretary of the association, who prior to the delivery of the policy, did go over with defendant the terms of the policy and pointed out specifically the amount on the face of the policy which would be payable to his beneficiary upon the death of the member.

Plaintiff further contends that the certificate was never returned to it by defendant for a change of beneficiary, for the purpose of securing a loan or for any other purpose, prior to its maturity date, and therefore the association never had the opportunity to observe the certificate held by defendant. The association certainly would not need to rely upon defendant requesting changes of beneficiary or making loans on his policy, in order to observe mistakes made by their duly qualified agents or employes. An association that is actively operating in 35 States would have ample facilities and trained personnel to review and observe in their own records in the main office at Omaha, certificates of insurance to the various members. They would be in a far better position to discover their own

mistakes than one who was not trained in the writing of insurance policies.

The association likewise contends that the mistake was so great that an inference might easily arise that Arnold must have recognized the error. The face of the policy, presently presented to us for our consideration, being in the amount of $4,034, the amount of error or difference was 38.6 percent. The amount of error, taking into consideration the actuarially correct amount in the sum of $2,476 was 62.9 percent.

The leading case in Pennsylvania is that of Kaufman v. New York Life Ins. Co. supra. The case involved a stock company insurance policy in which the cash surrender value on the face of the policy was listed thereon in the amount of $1,356, but the correct amount should have been $936, leaving a difference or error of $420. The Superior Court in this case which was later affirmed by the Supreme Court, reversed the Municipal Court of Philadelphia who entered judgment n.o.v. for the insurance company. Reformation was refused in this case where the error was 31 percent as compared to the stated amount of 44.9 percent compared to the actuarilly correct amount. Again, in the case of Equitable Life Assurance Society of U. S. v. Saurman, supra, in which the stated monthly annuity on the face of the policy was $55.58, and the actuarially correct amount should have been $23.15, the court refused reformation where the error was 58.4 percent of the monthly annuity as stated on the policy, as compared to the actuarially correct monthly annuity in the sum of 140 percent.

In the case of Hayes v. Travellers Insurance Co., 93 F. 2d 568, where the disability benefit was $100 instead of the correct amount of $50, leaving a difference of 100 percent, where the contract was executed by the president, the department secretary and re-

corder of the Life Department of the insurance company, the court in dismissing the case on the basis of the doctrine of equitable estoppel stated as follows, at page 571:

"One having the capacity and opportunity to read a contract, who executes it without reading it, in the absence of fraud or imposition, or special circumstances excusing his failure to read it, is charged with knowledge of its contents and cannot avoid the contract by asserting that it did not express what he intended.

"The converted policy was delivered to Mrs. Hayes, she accepted it, paid the premiums, and suffered disability before the insurance company brought the alleged error to her notice. It follows that the insurance company is bound by the provisions of the contract as written and is not entitled to relief either at law or in equity."

Unquestionably the error was not one of mutuality, but a purely unilateral mistake on the part of plaintiff's representatives in which defendant was in no way responsible. There is nothing to show from the pleadings, the depositions, or testimony submitted, that defendant had knowledge of, or participated in any manner in connection with the preparation of the certificate of insurance, nor with the insertion of the figures appearing on the face of the certificate; nor has defendant conducted himself in such a manner, nor was he negligent so as to justify plaintiff into concluding that the terms of the writing were accepted by him other than those which appear on the face of the certificate.

"Where the signer of a writing has made an innocent mistake as to the nature of his act without carelessness, whether induced by fraud or not, the writing is not his expression, and there is no contract. But if a man acts negligently and in such a way as to justify

others supposing that the terms of the writing are assented to by him and the writing is accepted on that supposition, he will be bound both at law and in equity".

5. Williston on Contracts, §1577.

"The fact that one of the parties entered into a transaction as a result of a purely unilateral mistake affords no basis for rescission or other relief, where the other part to the transaction was in no way responsible for the existence of such misapprehension, and in entering into the contract, acted in good faith without knowledge of such mistake": Sum. Pa. Jur., Contracts, §223; see 12 Am. Jur., Contracts, §133, p. 634.

From the foregoing mathematical calculations and a comparison of the cases of our appellate courts with the case before us for determination, we conclude that the error was not sufficiently substantial to apprise defendant with knowledge that a mistake had been made in the preparation of his certificate of insurance, and accordingly we find the following

*Conclusions of Law*

1. Plaintiff has failed in its burden of proof to show that the certificate issued to defendant providing for a paid-up certificate of life insurance in the amount of $4,034 at the end of 20 years as set forth in the terms of the contract, was the result of a mutual mistake.

2. Plaintiff has failed to present clear, precise and indubitable evidence of a mutual mistake in the original contract, so as to make the original contract the subject of equitable reformation.

3. Plaintiff has failed to show that defendant had knowledge, actual or constructive, of the existence of a mistake, and has presented no evidence to give rise to the inference of fraud or bad faith. Therefore, the error in the original contract cannot now be corrected by reformation in a court of equity.

4. Plaintiff has failed to show that the conflict or contradiction between the amount stated on the face of the policy and the actuarially correct amount, was sufficient to charge defendant with notice that a mistake had been made.

*Order*

And now, February 1, 1960, plaintiff's complaint in equity is dismissed. Plaintiff is directed to issue a fully paid-up insurance certificate to defendant, Marvin C. Arnold, in the amount of $4,034 payable at the death of the said defendant. Costs to be paid by Woodmen of the World Life Insurance Society, plaintiff.